# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STEPHEN MYNATT and ANITA ELAINE MYNATT, on their own behalf And on behalf of all others similarly situated, | ) ) ) ) ) | No. 71060-5-I |
| Appellants/Cross-Respondents, | ) ) ) | |
| | ) ) | DIVISION ONE |
| v. | ) ) | |
| GORDON TRUCKING, INC., a Washington corporation, | ) ) ) | UNPUBLISHED OPINION |
| Respondent/Cross-Appellant. | ) ) ) | FILED: July 14, 2014 |

SPEARMAN, C.J. — The issue in this appeal is whether a trucking company's pay plan included pay for interstate drivers that is "reasonably equivalent" to overtime, as required by RCW 49.46.130(2)(f). Stephen and Anita Mynatt, a married couple, are team long-haul truck drivers employed by Gordon Trucking, Inc. (GTI). The Mynatts brought claims against GTI for failure to pay overtime and three other claims predicated on the overtime claims. While the lawsuit was pending, the Washington Department of Labor and Industries (L&I) issued a determination letter that the Mynatts' pay plan included the reasonable

equivalent to overtime. The trial court dismissed the Mynatts' claims on summary judgment. We affirm.

## FACTS

GTI is a motor carrier headquartered in Pacific, Washington. The Mynatts have been employed by GTI as Washington-based team long-haul drivers since 2004 and are dispatched out of its Pacific terminal. The Mynatts are subject to the Federal Motor Carrier Act, 49 U.S.C. § 3101.

Since 1989, Washington state has authorized motor carriers to compensate drivers with pay that is "reasonably equivalent" to overtime (REOT) through non-hourly, piece-rate compensation plans. WAC 296-128-012 (1989); see also Westberry v. Interstate Distrib. Co., 164 Wn. App. 196, 200, 263 P.3d 1251 (2011). Prior to 2007, L&I interpreted Washington's overtime laws as applying only to drivers' work performed within the state. Id.; former WAC 296-128-011 (1989). Accordingly, GTI's understanding before 2007 was that it was not required to pay overtime for out-of-state work, and it told the Mynatts after they were hired that they would not receive overtime pay as long-haul, interstate drivers.[1] The Mynatts were paid under GTI's PLUSS plan, a mileage-based plan that pays a certain number of cents per dispatched mile associated with each load. Clerk's Papers (CP) at 144. The miles are computer-generated and reflect "practical miles" from city center to city center, not odometer miles. CP at 64. The

---

[1] The terms "long haul drivers" and "interstate drivers" are used interchangeably by the parties and are distinguished from "intrastate drivers" that are compensated under a mileage-based pay plan and "local drivers" that are compensated hourly.

PLUSS plan also pays flat-rate "accessorial pay" for certain non-driving activities (e.g., loading and unloading). CP at 147, 165, 1309. For short hauls (less than 125 miles), the PLUSS plan pays mileage pay plus an additional $10 to $30.

In March 2007, the Washington Supreme Court held that RCW 49.46.130(1) requires that Washington-based drivers receive overtime pay for all hours worked over 40 per week, whether those hours are performed in or out of the state. Bostain v. Food Express, Inc., 159 Wn.2d 700, 710-21, 153 P.3d 846 (2007). L&I amended its regulations to comport with Bostain. Westberry, 164 Wn. App. at 201. With respect to pay plans in place before March 1, 2007, L&I gave employers of drivers who worked over 40 hours a week, consisting of both in-state and out-of-state hours, the opportunity to request formal determinations of whether the plans included "overtime that was at least reasonably equivalent to that required by RCW 49.46.130." WAC 296-128-012(3).

On January 16, 2009, GTI submitted to L&I a request for a determination that the PLUSS plan satisfied the REOT requirement under RCW 49.46.130.[2] GTI followed L&I's Administrative Policy ES.A.8.3 (10/24/08), submitting estimates of hours worked, compensation, miles driven, and average speed information for 30 randomly selected drivers (including both of the Mynatts) over a 26-week period. GTI wrote to L&I:

> Gordon Trucking pays its [long] haul drivers an alternative
> mileage based pay on a weekly basis. Notice to drivers of this
> pay policy is attached hereto as Exhibit A — Reasonably

---

[2] GTI also submitted five other pay plans for approval. Only the PLUSS plan is at issue in this appeal.

Equivalent Pay Policy, which was mailed to drivers and
published internally. The effective date was January 1, 1998.

CP at 147. Exhibit A, the Reasonably Equivalent Pay Policy (REP Policy), is titled

"Description of Driver Compensation for work performed within the State of

Washington," with an effective date of January 1, 1998. It states:

Mileage Runs:

Drivers working mileage runs receive mileage pay at their
applicable mileage pay rate, plus accessorial pay (i.e. loading,
unloading, making doubles or breaking doubles), if applicable. The
combination of mileage pay and accessorial pay rates include a
20% factor for anticipated overtime up to a workweek of 65 hours.
As a result, drivers are paid the reasonable equivalent of overtime,
which is already figured into the rate from the first hour worked.

CP at 152.

The Mynatts filed suit against GTI on June 2, 2010, alleging, in pertinent

part, claims for (1) failure to pay overtime; (2) failure to pay all wages due; (3)

willful failure to pay all wages due; and (4) violations of Washington's Consumer

Protection Act (the three last claims are the "predicate claims"). They sought

recovery for the period March 30, 2007 through the date of trial.

On December 16, 2010, L&I issued a determination that the PLUSS plan

paid REOT under RCW 49.46.130(2)(f) dating back to July 1, 2005. On January

13, 2012, GTI moved for summary judgment on the Mynatts' overtime and

predicate claims. The trial court denied the motion. The Mynatts then moved for

summary judgment on their overtime claims and GTI moved for reconsideration

of the court's denial of GTI's motion for summary judgment. On April 16, 2012,

the trial court entered an order granting GTI's motion for reconsideration and

GTI's motion for summary judgment, and denying the Mynatt's cross-motion for summary judgment. The Mynatts appeal.[3]

## DISCUSSION

This court reviews summary judgment de novo, engaging in the same inquiry as the trial court. Highline Sch. Dist. No. 401, King County v. Port of Seattle, 87 Wn.2d 6, 15, 548 P.2d 1085 (1976). Summary judgment is proper only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Bostain, 159 Wn.2d at 850. Facts and reasonable inferences therefrom are viewed most favorably to the nonmoving party. Id. Summary judgment is proper if reasonable minds could reach but one conclusion from the evidence presented. Id.

L&I "has the authority to supervise, administer, and enforce all laws pertaining to employment, including wage and hour laws." Schneider v. Snyder's Foods, Inc., 116 Wn. App. 706, 717, 66 P.3d 640 (2003) (citing RCW 43.22.270). Where L&I determines that a compensation plan contains REOT, courts give due deference to its specialized knowledge and expertise, unless its actions are "arbitrary, capricious, and contrary to law." Id. at 716. An agency action is

---

[3] On April 2, 2012, GTI moved to strike the Mynatts' expert's report, which they had submitted in support of their opposition to GTI's motion for summary judgment. The Mynatts had engaged William Brandt, a forensic economist and accountant, to estimate the amount of unpaid overtime to which they were entitled. The trial court denied GTI's motion on April 16. GTI cross-appeals the denial of its motion to strike, but given our disposition of this appeal we do not reach the issue presented in its cross-appeal. GTI does not seek affirmative relief on cross-appeal. Rather, its cross-appeal presents an alternative ground for affirming. GTI argues that Brandt's expert testimony was the only evidence on which they relied to establish the elements of their overtime claims and that such evidence was inadmissible; thus, their claims failed even if L&I's finding was arbitrary and capricious.

arbitrary and capricious if it is "'willful and unreasoning, and taken without regard to the attending facts or circumstances.'" Id. (quoting ITT Rayonier, Inc. v. Dalman, 122 Wn.2d 801, 809, 863 P.2d 64 (1993)). "Where there is room for two opinions, action is not arbitrary and capricious even though one may believe an erroneous conclusion has been reached." Id. at 717 (internal quotation marks and citation omitted). An agency's interpretation will be upheld if it is a "plausible construction of the statute or rule" at issue. Id. at 716 (citing Seatoma Convalescent Ctr. v. Dep't of Soc. & Health Servs., 82 Wn. App. 495, 518, 919 P.2d 602 (1996)). Courts, however, have the ultimate authority to interpret a statute, and no deference is due to an agency's interpretation if it conflicts with a statutory mandate. Bostain, 159 Wn.2d at 716-17.

The statute at issue in this case is RCW 49.46.130, which provides, in relevant part:

> (1) Except as otherwise provided in this section, no employer shall employ any of his or her employees for a work week longer than forty hours unless such employee receives compensation for his or her employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he or she is employed.
> (2) This section does not apply to:
> . . .
> (f) An individual employed as a truck or bus driver who is subject to the provisions of the Federal Motor Carrier Act (49 U.S.C. Sec. 3101 et seq. and 49 U.S.C. Sec. 10101 et seq.), if the compensation system under which the truck or bus driver is paid includes overtime pay, reasonably equivalent to that required by this subsection, for working longer than forty hours per week[.]

(Emphasis added.) L&I promulgated rules to implement RCW 49.46.130 — in pertinent part, WAC 296-128-011 and WAC 296-128-012. The latter states that, to meet the "reasonably equivalent" requirement of RCW 49.46.130(2)(f),

> . . . an employer may, with notice to a truck or bus driver subject to the provisions of the Federal Motor Carrier Act, establish a rate of pay that is not on an hourly basis and that includes in the rate of pay compensation for overtime. An employer shall substantiate any deviation from payment on an hourly basis to the satisfaction of the department by using the following formula or an alternative formula that, at a minimum, compensates hours worked in excess of forty hours per week at an overtime rate of pay and distributes the projected overtime pay over the average number of hours projected to be worked.

WAC 296-128-012(1)(a). The rule sets forth a recommended formula "for establishing a uniform rate of pay to compensate work that is not paid on an hourly basis and for which compensation for overtime is included."[4] WAC 296-128-012(1)(b) provides,

> In using a formula to determine a rate of pay, the average number of hours projected to be worked and the average number of work units accomplished per week shall reflect the actual number of hours worked and work units projected to be accomplished by persons performing the same type of work over a representative time period within the past two years consisting of at least twenty-six consecutive weeks.

---

[4] The formula first requires a defined work unit (e.g., miles), then takes the average number of work units accomplished per week and divides it by the average number of hours projected to be worked per week, resulting in a figure that is the average number of work units accomplished in an hour. The "weekly base rate" is the number of units per hour, multiplied by 40 (hours), multiplied by the "base rate of pay." The "weekly overtime rate" is the number of units per hour multiplied by the number of hours over 40, multiplied by the "overtime rate of pay." The "total weekly pay" is the weekly base rate plus the weekly overtime rate. Finally, to determine the "uniform rate of pay" (that is, the rate for which compensation for overtime is included), the total weekly pay is divided by the total weekly work units.

WAC 296-128-012 provides an example of a uniform mileage rate, in which a driver working 45 hours per week receives a composite rate of 21.1 cents per mile, of which 20 cents per mile (the "base rate") is meant to compensate the driver for 40 and under hours worked in a week and the remaining 1.1 cents per mile is allocated to compensate the driver for hours worked over 40 spread across all hours worked.

Under the "special recordkeeping requirements" provision of WAC 296-128-011,

> (1) . . . employers who employ individuals as truck or bus drivers subject to the provisions of the Federal Motor Carrier Act shall maintain records indicating the base rate of pay, the overtime rate of pay, the hours worked by each employee for each type of work, and the formulas and projected work hours used to substantiate any deviation from payment on an hourly basis pursuant to WAC 296-128-012. The records shall indicate the period of time for which the base rate of pay and the overtime rate of pay are in effect.
>
> For the purposes of this section and WAC 296-128-012, "base rate of pay" means the amount of compensation paid per hour or per unit of work in a workweek of forty hours or less. A base rate of pay shall be established in advance of the work performed and may be based on hours or work units such as mileage, performance of specified duties, or a specified percentage of the gross proceeds charged for specified work. A base rate of pay shall not be established that will result in compensation at less than the minimum wage prescribed in RCW 49.46.020. "Overtime rate of pay" means the amount of compensation paid for hours worked in excess of forty hours per week and shall be at least one and one-half times the base rate of pay.
>
> (2) The records required by this section shall be made available by the employer at the request of the department. Any current or past employee may obtain copies of the formula, the base rate of pay, the overtime rate of pay, and that employee's records. Job applicants seeking employment by the employer as truck or bus drivers subject to the provisions of the Federal Motor Carrier Act, may obtain copies of the formula, the base rate of pay, and the overtime rate of pay.

The Mynatts do not dispute that GTI's mileage-based plans, including the

PLUSS plan under which they were paid, were administered uniformly across the

nation.[5] They also acknowledge that certain aspects of the REP Policy were applicable to them. For example, they agree they were paid a mileage rate, i.e., a certain number of cents per mile based on years of experience. They also agree that, like all other mileage-based drivers, they were paid "accessorial" pay for non-driving work related activities. Id. The point of dispute, however, is whether, the combination of mileage pay and accessorial pay rates for long haul drivers included a 20 percent factor for anticipated overtime that resulted in them receiving REOT.

The Mynatts first argue that their compensation did not include REOT because GTI failed to comply with the requirements of WAC 296-128-011 or –012. The former defines "base rate of pay" as "the amount of compensation paid per hour or per unit of work in a workweek of forty hours or less" and requires that the "base rate of pay shall be established in advance of the work performed . . . ." The latter provides that "an employer may, with notice to a truck or bus driver ... establish a rate of pay that is not on an hourly basis and that includes in the rate of pay compensation for overtime." In addition, WAC 296-128-012 also recommends a formula "for establishing a uniform rate of pay to compensate work that is not paid on an hourly basis and for which compensation for overtime is included."[6] The Mynatts contend that GTI failed to establish a base rate of pay

_____

[5] GTI's Director of Payroll Susan Geving testified that, since at least 1994, GTI's pay plans do not pay Washington-based drivers separate rates for work done interstate and work done intrastate. GTI's Chief Operating Officer (COO) Gordon testified that he believes GTI pays all drivers REOT "[b]ecause our drivers are generally paid the same all across the network. . . ." CP at 2389. This testimony was uncontradicted.

[6] See note 4, supra.

in advance of the work performed and failed to provide advance notice that their non-hourly compensation, i.e. the mileage rate, included compensation for overtime.[7] As a result, they argue, the mileage rate at which they were compensated is actually the base rate upon which the overtime rate should be calculated.

But neither RCW 49.46.130 nor the regulations promulgated to implement that statute dictate such a result. First, GTI does not claim that it established a base rate. Rather, its position, in essence, is that the mileage rates were the drivers' "uniform rate of pay" as used in WAC 296-128-012(1)(a). In other words, the drivers' mileage rates had built-in overtime. The Mynatts dispute this claim because GTI failed to follow the recommended formula set forth in that section to establish a uniform rate of pay by first establishing a base rate of pay. But the recommended formula is just that, a recommendation; it is not the exclusive method for establishing a uniform rate of pay.[8] The Mynatts do not identify any statute, regulation, or rule that prohibits GTI from establishing a uniform rate of pay in the manner that it did.

---

[7] The Mynatts also point out that COO Gordon testified that drivers' base rate of pay is their mileage rate and that GTI recruiter Patty Schmidt testified that she advised applicants that their base rate is their mileage rate. But neither Gordon nor Schmidt were asked whether their understanding of the term "base rate" was the definition of that term as it is defined in WAC 296-128-011(1).

[8] WAC 296-128-011(1)(a) provides in part:

An employer shall substantiate any deviation from payment on an hourly basis to the satisfaction of the department by using the following formula or an alternative formula that, at minimum, compensates hours worked in excess of forty hours per week at an overtime rate of pay and distributes the projected overtime pay over the average number of hours projected to be worked. (Emphasis added.)

Second, to the extent it is necessary to establish a base rate of pay under WAC 296-128-011, utilizing the hourly rates for local drivers as the base rate of pay for interstate drivers is not contrary to RCW 49.48.030(1)(2). Under L&I's construction of that statute prior to Bostain, GTI was not required to calculate a base rate of pay in advance for interstate drivers. After Bostain, L&I amended its regulations to permit employers to submit pay plans in place before March 1, 2007 to L&I for a determination whether the pay plans included REOT. It stands to reason that these pay plans would not include a base rate of pay established in advance of the work to be performed as required by WAC 296-128-011(1) or provide notice to the employee of the uniform rate of pay as required by WAC 296-128-012(1)(a). Instead, establishing a base rate of pay may be determined retrospectively, and one method of doing so, adopted by L&I, is utilizing the hourly rates paid to local drivers as the base rates for interstate drivers.[9]

Lastly, the Mynatts do not dispute that intrastate mileage-based drivers, whose pay was configured pursuant to the same formula, received REOT. If the

---

[9] Administrative Policy ES.A.8.3(B)(3)(c)(iii)) provides:

If the company employs truck drivers who are paid under traditional overtime as well as truck drivers who are or will be paid under a compensation system that the company proposes as reasonably equivalent to traditional overtime, then comparison calculations should be based on similarly situated drivers at the company under both payment methods. For example, a company employs both local drivers who are paid hourly under traditional overtime and line haul drivers who are paid on a mileage basis. For purposes of calculations submitted to L&I, the company should compare for each workweek what each line haul driver's gross pay was relative to what the gross pay would have been if each line haul driver was paid hourly, as if a local driver.

CP at 318.

failure to establish a base rate of pay in advance of the work performed for intrastate mileage-based drivers did not preclude them from being paid REOT, then neither does it preclude interstate mileage-based drivers such as the Mynatts from being paid REOT.

Next, the Mynatts contend that GTI executives testified that the REP Policy did not apply to work outside Washington and they were unaware mileage rates included REOT until L&I determined they did. Viewing this testimony in a light most favorable to the Mynatts, GTI executives testified that they were unaware long-haul drivers were entitled to overtime and that the Mynatts, in particular, were told they would not receive overtime compensation. The executives also testified that GTI did not advise its long-haul drivers that the mileage rates included REOT and did not advertise that its compensation for long-haul drivers included REOT. The issue is whether this testimony creates a genuine issue of material fact regarding whether the Mynatts, in fact, received REOT. We conclude that it does not.

The Mynatts do not dispute that the REP Policy applied to mileage-based intrastate drivers compensated under the PLUSS pay plan and that those drivers received REOT. GTI executives testified that all mileage-based drivers are generally paid the same all across the network and that GTI does not pay separate rates for interstate and intrastate work. The Mynatts have produced no

evidence to the contrary.[10] They contend only that, because GTI failed to establish a base rate of pay in advance of the work performed, there must be a separate and distinct pay plan for interstate drivers. But, as noted above, GTI also did not establish a base rate of pay in advance for intrastate drivers and yet the Mynatts do not dispute that intrastate drivers received REOT. In light of the uncontested evidence that the same pay plan applied to both interstate and intrastate mileage-based drivers and that intrastate drivers received REOT, the inescapable conclusion is that interstate drivers did as well. GTI executives' beliefs to the contrary do not create a genuine issue of material fact.

L&I's determination that GTI's pay plans for interstate mileage-based drivers included REOT is further support for this conclusion. Using the 26 weeks of sample data submitted by GTI, and applying Administrative Policy ES.A.8.3(B)(3)(c)(iii), L&I determined that the PLUSS plan paid REOT under RCW 49.46.130(2)(f) and WAC 296-128-012. Its determination letter stated that the results of GTI's study

> showed that the interstate truck drivers in the samples earned
> more in compensation over the six month period under the
> compensation system in place than they would have earned by

---

[10] The following exchange occurred below at oral argument on GTI's motion to reconsider the denial of its summary judgment motion and the Mynatts' motion for summary judgment:

> THE COURT: But [the interstate drivers] were not compensated
> differently than what's in the 1998 letter. At least we don't have anything
> that says they were compensated differently as to the mileage they drove,
> on a mileage basis.
> [Counsel for the Mynatts]: Well, that is correct. But we also don't have
> information that goes all the way back to 1998, which is many, many years
> outside the liability period, more than ten years outside the liability period.

VRP (4/13/2012) at 83.

being paid time and one-half the base rate for hours worked in excess of 40 per week, using a base hourly rate of between $12.50 and $16.50 per hour the same rates paid to the company's local drivers of similar experience levels.[11]

CP at 144.

The Mynatts do not challenge the accuracy of GTI's calculations or offer evidence of a higher hourly rate to which their work should have been compared. Instead, they contend we should disregard L&I's determination because, in their view, the determination is based on an administrative rule that is contrary to RCW 49.46.130.

An agency's rule is invalid if it is not reasonably consistent with the statute being implemented. Bostain, 159 Wn.2d at 715. The Mynatts argue that Administrative Policy ES.A.8.3(B)(3)(c) violates RCW 49.46.130(2)(f) because it permits L&I to compare the sample drivers' wages to local delivery drivers' hourly wages. They contend this violates the statute because, instead of requiring companies to substantiate their REOT claims based on drivers' "regular rate of pay" (which they contend was their mileage rate), as required under RCW 49.46.130(1), it allows L&I to use the rate of pay of a "similarly situated" comparator. And here, the Mynatts contend, the comparison was unfair because

---

[11] With regard to the Mynatts, GTI's data showed that Stephen earned an effective hourly rate of between $20.83 and $26.79 for the first 40 hours of work. For the same pay periods, the data showed that he earned a corresponding effective overtime rate of between $31.25 and $40.19. These effective hourly rates were higher than the hourly rate ($14.25), including overtime ($21.37), that GTI paid its hourly drivers with his level of experience. Similarly, the data showed that Anita earned an effective hourly rate of between $20.41 and $26.25 for the first 40 hours of work. For the same pay periods, the data showed that she earned a corresponding effective overtime rate of between $30.61 and $39.38. These effective hourly rates were higher than the hourly rate ($13.75), including overtime ($20.62), that GTI paid hourly drivers with her level of experience.

long-haul drivers' pay was compared with the lower rates of local delivery drivers. The Mynatts note that long-haul drivers are generally paid more than local delivery drivers because they are away from their homes for periods of 7 to 28 days before returning home for two to three days off, whereas local drivers return home every night after making short hauls (and are home every weekend. They point out that GTI executives admitted that long-haul drivers receive greater pay and that the greater pay is demonstrated by GTI's pay matrices.

GTI does not dispute that long-haul drivers are generally paid more than local delivery drivers. But RCW 49.46.130(2)(f), which requires compensation systems for truck drivers to include overtime reasonably equivalent to that required by that subsection (i.e., "one and one-half times the regular rate at which" an employee is employed, see RCW 49.46.130(1)), does not specify how a piece-meal compensation system might be determined to contain REOT. It does not preclude L&I from comparing sample drivers' wages to local delivery drivers' hourly wages, as L&I did under Administrative Policy ES.A.8.3(B)(3)(c). Furthermore, there is no evidence in the record to indicate what portion of the difference in the pay of long-haul drivers versus that of local delivery drivers is attributable to market factors rather than the overtime component in the long-haul drivers' mileage-based plans. The Mynatts assume that the entire difference is attributable to market factors, but offer no evidence to support that assumption.

A recent decision from the United States District Court for the Western District of Washington, Helde v. Knight Transportation, Inc., 982 F. Supp.2d

1189, 1201 (2013) is instructive. There, the defendant motor carrier provided evidence that its mileage-plus compensation system generally resulted in drivers being paid more than they would have received under an hourly rate plus time-and-a-half system. Id. The plaintiff truck drivers argued that the carrier could not show it paid REOT because "there was no pre-established 'base rate of pay' to give meaning to defendant's calculations and/or because defendant failed to account for the higher hourly rates paid to more experienced drivers." Id. As here, L&I was "willing to accept the hourly rate trucking companies pay their local or short-haul drivers as the 'base rate of pay' for purposes of evaluating the reasonable equivalence of a proposed alternative compensation system." Id. The evidence showed that the carrier paid its Washington drivers $12.00 per hour. The federal district court explained that in the absence of evidence that an alternative "base rate" was appropriate, the $12.00 rate was an appropriate starting point for the WAC 296-128-012 calculation. Id. It concluded that "[g]iven the calculations presented and [L&I's] willingness to accept similar compensation structures as reasonably equivalent under RCW 49.46.130," the drivers failed to raise a genuine issue of fact regarding their overtime claims. Id.

The Mynatts also argue that L&I's determination was arbitrary and capricious because it ignored GTI's failure to maintain records of actual hours worked by interstate drivers, in violation of L&I's special recordkeeping requirements. They contend that GTI's submissions were not accurate because GTI uses practical miles, which they assert are on average five percent less than

actual miles,[12] and did not include time spent on certain non-driving activities. We disagree. Under WAC 296-128-011, employers must maintain records of, among other things, the hours worked by each employee. WAC 296-128-011(1). They are required to make such records available to L&I upon request. WAC 296-128-011(2). Administrative Policy ES.A.8.3(B)(3)(d) states:

> Certification of accuracy and validity. An authorized representative of the company must certify under penalty of perjury under the laws of the State of Washington that the data and calculations provided to L&I for review are accurate, and are either complete or are reflective of the actual number of hours worked and work units projected to be accomplished by persons performing the same type of work over the time period for which records are submitted.

Here, GTI apparently did not maintain records of actual hours worked; rather, it maintained records of practical miles driven and average truck speeds, and the number of hours worked by drivers was calculated using those records. But GTI certified that the 26 weeks of data it submitted were accurate, valid, and "reflective of the actual number of hours worked." RCW 49.46.130 does not set forth recordkeeping requirements, so there is no obvious conflict with legislative intent. Nor does Administrative Policy ES.A.8.3(B)(3)(d) conflict with WAC 296-128-011 by requiring a certified statement of accuracy in satisfaction of the rule.

The Mynatts next contend L&I's determination is arbitrary and capricious because it is based on erroneous factual support. They contend GTI made a material misrepresentation when it directed L&I to the REP Policy as evidence

---

[12] The Mynatts tracked their odometer miles and compared them to their "practical miles." They assert that, according to their calculations "practical miles" are on average five percent less than odometer miles.

that long-haul drivers' per-unit rate of pay included an overtime component, because the REP Policy, as the policy itself stated, did not apply to long-haul drivers. We reject this argument. First, despite the REP Policy's statement that it applied to work within the state, the Mynatts do not show that there was a different pay plan or scale applicable to mileage-based work outside of the state of which L&I should have been aware. Second, as GTI points out, L&I received the REP Policy and was able to review it.

Finally, the Mynatts argue that L&I's determination was arbitrary and capricious because, even if the REP Policy applied to out-of-state work, GTI still failed to pay them REOT for hours worked over 65 a week where the REP Policy stated that "[t]he combination of mileage pay and accessorial pay rates include a 20% factor for anticipated overtime up to a workweek of 65 hours." CP at 1930. They point out that in approximately 15% of the weeks during the sample period, they and other drivers worked over 65 hours a week. We disagree. Under WAC 298-128-012, an employer may use a pay formula that distributes projected overtime pay "over the average number of hours projected to be worked." While the evidence submitted to L&I showed that there are weeks in which GTI drivers work more than 65 hours a week, it also showed that there are weeks in which drivers work less than 65 or even 40 hours a week. There is no apparent inconsistency with WAC 298-128-012 if an employer's pay formula accounts for the projected number of hours to be worked, and the Mynatts do not contend that WAC 298-128-012 is contrary to RCW 49.46.130(2)(f). Here, the Mynatts were

paid for every hour they worked at their mileage rate, including hours worked above 65 in a week.

In sum, because the Mynatts failed to raise a genuine issue of material fact regarding whether they were paid REOT, the trial court properly granted GTI's motion for summary judgment. There was no error.

_Spearman, C.J._

WE CONCUR:

_Schindler, J._          _Cox, J._